# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DJON LEOCARDIE DUBOSE,

        Defendant-Appellant.

UNPUBLISHED
October 13, 2016

No. 328118
Wayne Circuit Court
LC No. 14-004384-01-FC

Before: SAAD, P.J., and JANSEN and M. J. KELLY, JJ.

PER CURIAM.

Defendant, Djon Leocardie Dubose, appeals by right his bench convictions of first-degree felony murder, MCL 750.316(1)(b), and first-degree child abuse, MCL 750.136b(2). The trial court sentenced Dubose to serve life in prison without the possibility of parole for the felony murder conviction and to serve 15 to 30 years in prison for the first-degree child abuse conviction. Because we conclude there were no errors warranting relief, we affirm.

## I. BASIC FACTS

Dubose's convictions arise from the death of his three-month-old daughter in October 2013. On the morning at issue, the child's mother, Linda Liggions, and Dubose's mother left the child in Dubose's care and went to work. Several hours later, Dubose called his mother and stated that his daughter was not breathing. He stated that he performed CPR at the direction of 911, and emergency responders eventually took his daughter to the hospital. The child died several days later at the hospital.

At trial, the Washtenaw County medical examiner, Doctor Jeffrey M. Jensen, testified that the child had an old healing fracture to her left toe, a healing rib fracture on her right side, several fresh rib fractures on her right side, and a skull fracture "to the left side of the skull on the base of the skull" that "appeared to be contemporaneous with the death." Jensen concluded that the child's injuries were not consistent with an accident, could not have been a result of the "birth process," and were "very consistent with an intentional injury" caused by "[a] large amount of force" that was "something an adult man could inflict upon [a] baby."

Dubose provided the police with several versions of events, including that his daughter's injuries occurred when he placed her on the kitchen counter to perform CPR. However, Jensen opined that the child's injuries could not have resulted from Dubose's first two versions of

-1-

events, and that, while the child's injuries could have come from someone "put[ting] the baby down on a hard kitchen counter to do CPR and hit the child's head on the counter," "[i]t would have been a forceful blow from the head" and that "it would have been a slamming type injury." Dubose's trial lawyer argued that the prosecution had not demonstrated that Dubose had the specific intent to cause serious physical harm to his daughter; however, the trial court found Jensen to be credible and found Dubose guilty as charged.

## II.  SUFFICIENCY OF THE EVIDENCE

## A.  STANDARD OF REVIEW

Dubose first argues that the prosecutor did not present sufficient evidence to sustain his conviction for first-degree child abuse; specifically, he argues that there was insufficient evidence that he knowingly or intentionally caused severe physical harm to his daughter. Because there was insufficient evidence to support the predicate offense for the felony-murder charge, Dubose maintains, the prosecution failed to establish the elements of that charge as well. This Court reviews "a challenge to the sufficiency of the evidence in a bench trial de novo and in a light most favorable to the prosecution to determine whether the trial court could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Sherman-Huffman*, 241 Mich App 264, 265; 615 NW2d 776 (2000). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the . . . verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

## B.  ANALYSIS

Due process requires that a prosecutor introduce evidence sufficient to justify a trier of fact in concluding that the defendant is guilty beyond a reasonable doubt. *People v Johnson*, 460 Mich 720, 722-723; 597 NW2d 73 (1999). A prosecutor need not negate every reasonable theory of innocence, but must only prove his own theory beyond a reasonable doubt in the face of whatever contradictory evidence the defendant provides. *People v Chapo*, 283 Mich App 360, 363-364; 770 NW2d 68 (2009). All conflicts in the evidence must be resolved in favor of the prosecution. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

"Circumstantial evidence and reasonable inferences arising from the evidence may be sufficient to prove the elements of a crime." *People v Lane*, 308 Mich App 38, 58; 862 NW2d 446 (2014). "[B]ecause it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *Kanaan*, 278 Mich App at 622. The nature and extent of a victim's injuries provides circumstantial evidence of the defendant's intent. See *People v Howard*, 226 Mich App 528, 550; 575 NW2d 16 (1997). Further, questions of credibility should be left to the trier of fact to resolve. *People v Harrison*, 283 Mich App 374, 378; 768 NW2d 98 (2009).

In order to prove felony murder, the prosecutor had to prove that Dubose killed the child, that he did so with the intent to kill, or do great bodily harm, or create a high risk of death or great bodily harm with the knowledge that death or great bodily harm was the probable result,

and—in relevant part—while committing first-degree child abuse. *Lane*, 308 Mich App at 57-58. "The elements of first-degree child abuse are (1) the person, (2) knowingly or intentionally, (3) causes serious physical or mental harm to a child." *People v Gould*, 225 Mich App 79, 87; 570 NW2d 140 (1997). First-degree child abuse requires the prosecutor to establish not only that the defendant intended to commit the act, but also that the defendant intended to cause serious physical harm or knew that serious physical harm would be caused by the act. *People v Maynor*, 470 Mich 289, 291; 683 NW2d 565 (2004). Here, there is no dispute that the child suffered serious physical harm, nevertheless, Dubose asserts that there was insufficient evidence that he knowingly or intentionally caused that harm.

Viewed in a light most favorable to the prosecution, there was sufficient circumstantial evidence to prove that Dubose knowingly or intentionally harmed the child. At trial, evidence established that the child did not have the injury at issue before Liggions and Dubose's mother left for work, and that when she suffered the fatal injuries, she was in Dubose's exclusive custody. The court was also presented with Dubose's varying, and somewhat conflicting, accounts of how the child might have been injured. Moreover, Jensen explicitly stated that the child's injuries were "intentional" and caused by "[a] large amount of force," like "something an adult man could inflict upon [a] baby." Further, he opined that the nature and extent of the child's injuries were inconsistent with Dubose's fist two explanations. Jensen stated that it was possible that the child suffered her fracture when placed on the counter, but related that the injury would only have occurred in that event if the child was forcefully slammed onto the counter: "[i]t would have been a forceful blow from the head" that "would have been a slamming type injury."

The evidence that the child suffered a fatal fracture to the head, which could only have been inflicted by applying significant force, and that she suffered the injury while in Dubose's exclusive care, supports an inference that Dubose inflicted the injury and that he did so with the requisite intent. Given Dubose's conflicting explanations for how the child came to be injured, the trial court could also find that Dubose lacked credibility. Accordingly, the trial court could properly reject Dubose's innocent explanation for the injury—that is, it could reject his contention that the child suffered the injury while he was performing vigorous CPR. Under the totality of the evidence, the trial court could reasonably find that the prosecution had proved beyond a reasonable doubt that Dubose caused severe physical harm to the child and acted with the intent or knowledge that serious injury would result from his actions. There was sufficient evidence to support the first-degree child abuse conviction. Similarly, because Dubose killed the child in the course of committing first-degree child abuse and did so with the requisite malice, see *People v Carines*, 460 Mich 750, 759; 597 NW2d 130 (1999) (stating that malice may be inferred from evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm), the prosecution also presented sufficient evidence to sustain Dubose's conviction of felony murder.

## III. INEFFECTIVE ASSISTANCE

### A. EVIDENTIARY HEARING AND STANDARD OF REVIEW

Dubose next contends that his trial lawyer was ineffective; specifically, he maintains that his trial lawyer should have investigated a potential expert witness, should have utilized an

expert in preparation for Jensen's cross-examination, and should have called an expert witness at trial. A defendant is entitled to an evidentiary hearing on a claim of ineffective assistance if he can show that further development of the factual record is necessary to advance the claim on appeal. See *People v Ginther*, 390 Mich 436, 443-444; 212 NW2d 922 (1973); MCR 7.211(C)(1)(a). In this case, Dubose did not file a separate motion for a remand with this Court and did not attach an affidavit or offer of proof. See MCR 7.211(C)(1)(a). He has asked for a remand in his brief on appeal and outlines some evidence that his trial lawyer failed to investigate whether it might be appropriate to have an expert assist with the trial, but he has not offered any proof that might establish whether and to what extent an expert might have testified favorably. Accordingly, he has not established the need for a remand. See *People v Williams*, 275 Mich App 194, 200; 737 NW2d 797 (2007).

Because the trial court did not hold an evidentiary hearing on Dubose's claim of ineffective assistance, there are no factual findings to which this Court must defer; instead, this Court's review is limited to mistakes that are apparent on the record alone. *People v Gioglio (On Remand)*, 296 Mich App 12, 20; 815 NW2d 589 (2012), remanded for resentencing 493 Mich 864. This Court reviews de novo whether a trial lawyer's particular act or omission fell below an objective standard of reasonableness under prevailing professional norms and prejudiced the defendant's trial. *Id.* at 19-20.

## B. ANALYSIS

In order to establish his claim of ineffective assistance, Dubose must show that his trial lawyer's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms, and that there is a reasonable probability that, but for the errors, the result of the proceedings would have been different. *Gioglio*, 296 Mich App at 22. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

Effective assistance of counsel is presumed, and the defendant bears a substantial burden of proving otherwise. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). A defendant can overcome the presumption by showing that counsel failed to perform an essential duty and that the failure was prejudicial to the defendant. *People v Reinhardt*, 167 Mich App 584, 591; 423 NW2d 275 (1988), remanded on other grounds 436 Mich 866 (1990). Decisions on whether to retain witnesses, including expert witnesses, are matters of trial strategy. *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003). Counsel's strategic judgments are afforded deference, but strategic choices made after an incomplete investigation are reasonable only to the extent that reasonable professional judgments support the limitation on investigation. *Wiggins v Smith*, 539 US 510, 521-522, 528; 123 S Ct 2527; 156 L Ed 2d 471 (2003).

Dubose contends that his trial lawyer's failure to investigate a potential expert witness amounted to ineffective assistance. He has not, however, established the factual predicate of his claim. See *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). There is nothing in the record to establish that his trial lawyer failed to investigate Jensen's testimony or failed to investigate the possibility of calling an expert to testify. Indeed, on this record, it is possible that Dubose's trial lawyer investigated the possibility and determined that it was unnecessary or unhelpful. The record shows that his lawyer thoroughly cross-examined Jensen and there is no

indication that his lawyer was ignorant "of valuable evidence which would have substantially benefitted the accused." *People v Caballero*, 184 Mich App 636, 642; 459 NW2d 80 (1990).

Dubose also asserts that his trial lawyer should have utilized an expert witness in preparation for Jensen's cross-examination. However, again, Dubose has not established the factual predicate of his claim. He has offered no proof that his lawyer failed to speak with an expert in preparation for Jensen's cross-examination. Instead, the record shows that his lawyer was fully prepared to cross-examine Jensen and successfully raised inconsistencies in Jensen's testimony and demonstrated how Dubose's version of events might be understood to be consistent with Jensen's conclusions.

For similar reasons, Dubose has not shown that his trial lawyer's failure to call an expert to testify on Dubose's behalf amounted to ineffective assistance. At trial, Jensen testified that the child's skull fracture "was very consistent with an intentional injury" caused by "[a] large amount of force," that the skull fracture was "something an adult man could inflict upon [a] baby," that the victim "died as a result of traumatic head injuries due to blunt force trauma," and that the manner of her death was "homicide." Dubose's trial lawyer aggressively cross-examined Jensen about inconsistencies between his preliminary examination testimony and trial testimony, whether he reviewed the records relating to the child's death before trial, and whether he could be certain as to the manner of the child's death. Although his trial lawyer arguably could have presented expert testimony refuting Jensen's conclusion that the child's injuries were intentional, his lawyer's failure to do so did not necessarily render his performance below an objective standard of reasonableness. Instead, his lawyer's decision to attack Jensen's testimony by highlighting discrepancies through cross-examination and argument rather than presenting a rebuttal expert witness, was a matter of trial strategy. See *People v Cooper*, 236 Mich App 643, 658; 601 NW2d 409 (1999).

On this record, Dubose has failed to overcome the presumption that his trial lawyer had a legitimate strategic reason for electing to forgo the use of an expert. *Gioglio*, 296 Mich App at 22-23. Moreover, even if his trial lawyer's decision not to engage the services of an expert fell below an objective standard of reasonableness under prevailing professional norms, Dubose has not established that there is a reasonable probability that, but for the error, there would have been a different outcome. *Id.* at 23. Dubose has merely speculated that an independent expert could have better prepared his lawyer to cross-examine Jensen or provided favorable testimony to his defense; he does not explain how a potentially favorable expert witness could have improved the cross-examination or rebutted Jensen's testimony.

There were no errors warranting relief.

Affirmed.

/s/ Henry William Saad
/s/ Kathleen Jansen
/s/ Michael J. Kelly

-5-